IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FRANCISCO M. LOPEZ-ROMO;<br>ROSA I. IRLANDA-MELENDEZ;<br>ARIANA LOPEZ-IRLANDA;<br>ANDREA LOPEZ-IRLANDA; and<br>FRANCISCO A. LOPEZ-MIERES<br><br>   Plaintiffs<br><br>         vs.<br><br>METRO SANTURCE, INC. D/B/A HOSPITAL PAVIA SANTURCE; CORPORATION A;<br>DR. UBALDO SANTIAGO-BRUNO;<br> DR. LUIS ALVAREZ; their wives, JANE DOE and JANE ROE; and their conjugal partnerships;<br>DR. JOHN DOE and DR. RICHARD ROE;<br>PROFESSIONAL PARTNERSHIPS "A" & "B";<br>SIMED; INSURANCE COMPANIES "A" & "B"<br><br>         Defendants | CIVIL NO.<br><br>PLAINTIFFS DEMAND TRIAL BY JURY<br><br>MEDICAL MALPRACTICE & DAMAGES |

COMPLAINT

TO THE HONORABLE COURT:

COME NOW, the plaintiffs, Francisco M. López-Romo; his wife Rosa I. Irlanda-Meléndez, their daughters Ariana López-Irlanda, Andrea López-Irlanda, and Francisco A. López-Mieres, by and through their undersigned attorneys and respectfully State and Pray as follows:

I.       JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to Title 28 United States Code Section 1332 (a) (1).

2.    This civil action invokes claims for damages and monetary compensation in excess of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs.  The facts that are alleged herewith are wholly between citizens of different states.  The

plaintiffs invoke the diversity jurisdiction of this Honorable Court under the provisions of Article III of the Constitution of the United States of America. This Honorable Court also has pendent jurisdiction to entertain any other causes of action that may arise under state law.

## II.   THE PARTIES

3.  The plaintiffs, Francisco M. López-Romo, his wife Rosa I. Irlanda-Meléndez and their daughter Andrea López-Irlanda are of legal age and residents of Florida; their daughter Ariana López-Irlanda is of legal age and resident of Pennsylvania; and Francisco A. López-Mieres is of legal age and resident of Marietta, Georgia.

4.  The defendant, METRO SANTURCE, INC., owns and/or operates the Hospital Pavía Santurce ("the defendant hospital"), was organized under the laws of Puerto Rico, and has its principal place of business and main office in Puerto Rico.

5.  In the alternative, Corporation "A" is the legal entity that owns and/or operates the Hospital Pavía Santurce ("the defendant hospital") and was organized under the laws of Puerto Rico with its office in Puerto Rico.

6.  The defendant, Dr. Ubaldo Santiago-Bruno was issued his medical license by the Puerto Rico Medical Examiners Board.  Dr. Ubaldo Santiago-Bruno and his wife, whose real name is presently unknown by the plaintiffs and is identified with the fictitious name of "Jane Doe", are residents of Puerto Rico and their conjugal partnership, if any, was organized under the laws of Puerto Rico.

7.  The defendant, Dr. Luis Alvarez was issued his medical license number 9983 by the Puerto Rico Medical Examiners Board.  Dr. Luis Álvarez and his wife, whose real name

is presently unknown by the plaintiffs and is identified with the fictitious name of "Jane Roe", are residents of Puerto Rico and their conjugal partnership, if any, was organized under the laws of Puerto Rico.

8.  The defendants, Dr. John Doe and Dr. Richard Roe are other medical doctors whose real names are presently unknown by the plaintiffs, and are residents of Puerto Rico.

9.  The defendants, Professional Partnerships "A" and "B" are legal entities that were organized by any of the defendants that are medical doctors, to render their medical services. Their real identities are presently unknown by the plaintiffs and were organized under the laws of Puerto Rico with their main offices in Puerto Rico. Their Professional Partnerships A and B benefited from the tortuous acts that were committed or from the omissions that were incurred by their defendant's partner. Said entities and partners are jointly and severally liable to the plaintiffs.

10. The defendants, Insurance Companies "A" and "B" are two legal entities whose identities are presently unknown by the plaintiffs and were organized under the laws of Puerto Rico or under the laws of any state other than Florida, Pennsylvania or Georgia, with their main offices located in Puerto Rico and were authorized by the Puerto Rico Insurance Commissioner to issue medical malpractice insurance policies or personal and/or business liability insurance policies of various kinds. At the time of the occurrence of the acts and/or omissions alleged herein-below, Insurance Companies A and B had issued medical malpractice insurance policies or other types of personal and/or business liability insurance policies to provide coverage to any of the defendants, Metro Santurce, Inc. d/b/a Hospital Pavía Santurce, Corporation A d/b/a Hospital Pavía Santurce, Dr. Ubaldo

Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe, Dr. Richard Roe and Professional Partnership A for claims as those as are being presented in this case. Insurance Companies A and B are jointly or severally liable together with their insured clients for any fault and/or negligence their insured may have incurred and for any liability that may be found, that resulted in causing the damages being claimed by the plaintiffs in this action.

11. The defendant, "Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria" ("SIMED") is a legal entity organized under the laws of Puerto Rico and was authorized by the Puerto Rico Insurance Commissioner to issue medical malpractice insurance policies of various kinds. At the time of the occurrence of the acts and/or omissions alleged herein-below, SIMED had issued professional liability insurance policies or medical malpractice insurance policies to cover the defendants, Metro Santurce, Inc. d/b/a Hospital Pavía Santurce, and/or to Corporation A, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe, Dr. Richard Roe and Professional Partnership A.

12. SIMED is jointly and/or severally liable together with any of its insured clients for any liability they may have incurred due to any fault and/or negligence and that resulted in causing the damages that are being claimed by the plaintiffs in this action.

### III.  RELEVANT FACTS

13. On July 14th, 2011, the plaintiff, Francisco M. López-Romo was 62 years old.

14. On July 14th, 2011, Francisco M. López-Romo noticed that he was presenting neck pain with tenderness to palpation and that he had an abscess in the right side of his neck.

15. On July 18th, 2011, Francisco M. López-Romo underwent an MRI that was performed by the radiologist, Dr. Oscar Crespo, who reported that Francisco M. López-Romo had an "ill defined roundish nodular mass in the right carotid space… most likely represent an enlarged lymph node… and differential diagnosis of inflammatory <u>lymphadenopathy</u> versus reactive neoplastic <u>lymphadenopathy</u>."

16. On July 20th, 2011, Francisco M. López-Romo went to the Hospital Pavía Santurce's Emergency Room for medical care of "the condition [that] established after study to be chiefly responsible for occasioning the admission to the hospital."

17. On July 20th, 2011, Francisco M. López-Romo was admitted to the defendant hospital, and was placed under the care of the defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe after his case was initially evaluated by the admitting physician Dr. Carlos Gómez and after his case was consulted with the radiologist, Dr. José Pérez who proceeded to perform core needle biopsy of the patient's lymphatic node in the patient's right parotic area and described the abscess "with abundant and suppurating inflammation."

18. On July 20th, 2011, through July 25th, 2011, the defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe were rendering their professional services for the department of internal medicine of the defendant hospital and were being assisted by the hospital's nursing staff.

19. The defendant, Hospital Pavía Santurce's Admission Form reported that the patient, Francisco M. López-Romo was admitted in the hospital on July 20th, 2011, and that the patient was discharged five days later, on July 25th, 2011, with the "Principal Diagnosis:

Neck Abscess. Code No. 194.1; 401.9; 272.4; Principal Procedure: .26.11"

20. On July 20th, 2011, the specimens or tissues that were obtained in Dr. José Pérez's core needle biopsy were sent that same day to the hospital's pathologist for his Pathology's Report of Cytopathology Service.

21. On July 25th, 2011, at the time that the plaintiff, Francisco M. López-Romo was discharged by the defendant hospital, the defendants, Dr. Ubaldo Santiago-Bruno and/or Dr. Luis Alvarez recorded in the patient's medical and hospitalization chart, the following information: "Results: ID" and had recorded in the Physician's Orders Discharge Order Form their "Final Disposition, Home."

22. On July 25th, 2011, the defendant hospital's "Discharge Summary" describes the attending physicians' Final Diagnosis for the patient that was recorded by the defendant, Dr. Luis Alvarez: "Neck Abscess" and "Arterial Hypertension."

23. On July 25th, 2011, the defendant, Dr. Luis Alvarez wrote in the patient's Discharge Summary under "Course In Hospital: Patient admitted due to Neck Abscess …evaluated … had good response … no complications."

24. On July 25th, 2011, the defendant, Dr. Luis Alvarez wrote in the patient's Discharge Summary under "Diagnosis: Good" and as "Final Disposition: Home."

25. On July 25th, 2011, after his discharge from the defendant hospital, the plaintiff, Francisco M. López-Romo was convinced that his medical condition had been properly taken care of, that he was discharged after successfully having responded to the antibiotics that were being administered to him during his five days of admission, and that his bacterial infection -that had been identified as staphylococcus aureus- had been

the only cause for the inflammation of the lymph node in the right side of his neck.

26. On July 25th, 2011, the plaintiff, Francisco M. López-Romo believed that he had received sufficient and adequate medical care or assistance during his hospitalization.

27. On July 25th, 2011, no medical orders were entered in the patient's hospital chart and no other medical orders were verbally communicated to the patient, that may have left him with the impression that he should continue with any additional medical consultations, or that there was any need for him to conduct any future medical studies, or that his condition was requiring that he should remain under any other medical observation. In other words, the patient was discharged by the defendant hospital and Francisco M. López-Romo was not notified that he should continue receiving any additional medical care for any other condition that he may have presented during this hospitalization.

28. On July 25th, 2011, Francisco M. López-Romo was left with very favorable impression about this supposedly successful treatment, and he was led to believe that he was completely cured of the bacterial infection that he had presented at the time of his admission and during his hospitalization with the defendant hospital. For him, that was the end of that very unpleasant experience.

29. Two years later, on October 23rd, 2013, the plaintiff, Francisco M. López-Romo became aware that he had again developed another mass that was located in the right side of his neck.

30. On October 23rd, 2013, Francisco M. López-Romo went to the defendant, Hospital Pavía Santurce's Emergency Room and CT Scan of the head -with and without intravenous contrast- was performed. On said date, the radiologist, Dr. Julio Sepúlveda reported the

following findings: "History: Right-sided weakness, status post drainage of a right-sided neck abscess approximately one year ago was reported… There is a heterogeneous mildly enhancing soft tissue localized at the level 2 in the right posterior to the sternocleidomastoid muscle and posterior to the jugular vein… that measures approximately 2.1 centimeters … this mass may represent a lymph node and with necrotic areas… Impression: Heterogeneous soft tissue mass … which may represent a lymph node with necrotic regions. Diagnostic considerations include that of a <u>metastatic lymphadenopathy</u> from head and neck <u>malignancy</u> versus chronic inflammatory changes within a lymph node. FNA ultrasound-guided biopsy is recommended."(Our underlining)

31. On October 23rd, 2013, the Emergency Room physician that was attending the plaintiff gave him the hand-written note of referral to the pathologist, Dr. Víctor Carlo Chévere that ordered soft tissue fine needle biopsy. On October 23rd, 2013, the patient was told that Dr. Víctor Carlo Chévere was not available on that date, and the patient was instructed to contact the pathologist to schedule this procedure during the following week.

32. On October 23rd, 2013, after he left Hospital Pavía Santurce, the plaintiff, Francisco M. López-Romo then flew to Orlando, Florida, where his wife, Rosa I. Irlanda-Meléndez and their daughter Andrea López-Irlanda were visiting Dr. Víctor Robert's and his wife's residence.

33. On October 23rd, 2013, the plaintiff, Francisco M. López-Romo consulted with Dr. Víctor Roberts who then referred the patient for consultation with an ENT surgeon, Dr. Rothbaum and with the hematologist-oncologist, Dr. Greg Ortega.

34. During the next few days, Dr. Víctor Roberts, Dr. Rothbaum and Dr. Greg Ortega were recommending that Francisco M. López-Romo should undergo core needle biopsy instead of fine needle biopsy since, in their medical opinion, core needle biopsy was somewhat riskier than fine needle biopsy but the core needle biopsy would provide higher probabilities of correctness and would be of better assistance to any treating physicians in properly identifying the patient's health condition.

35. At the time, the plaintiff, Francisco M. López-Romo had some health insurance coverage -what was then available to him- under the Triple S' health insurance plan. On October 24th, 2013, Francisco M. López-Romo had some limited coverage for those services that were being rendered outside of Puerto Rico, so the plaintiff first contacted the pathologist that he had been referred to by the hospital's physician and called Dr. Víctor Carlo Chévere's office to schedule his appointment but the patient was told that the pathologist did not perform any core needle biopsies.

36. On October 25th, 2013, the Office-Visit Notes of ENT Dr. Daniel Rothbaum, M.D., with offices in Lake Mary, Florida, with an encounter date of Oct. 25, 2013, reported that the patient, Francisco M. López-Romo had presented "Swelling/Mass in Neck…Severity: Moderate." That day, Dr. Rothbaum ordered "image-guided core needle biopsy neck mass."

37. On October 25th, 2013, the plaintiff, Francisco M. López-Romo decided to undergo his core needle biopsy in Orlando, Florida, under the care of Dr. Greg Ortega's medical group.

38. On October 25th, 2013, plaintiff Francisco M. López-Romo disclosed to Dr. Rothbaum

and to Dr. Ortega about his previous hospitalization at the defendant hospital. On that day, Francisco M. López-Romo was requested by them to obtain photocopies of the hospital's records so they could have clearer idea of what were his previous medical conditions and what had been his treating physicians' previous diagnosis.

39. On October 25th, 2013, Francisco M. López-Romo sent a letter to the Hospital Pavía Santurce to request photocopies of his previous medical and hospitalization record from July 20, 2011 through July 25, 2011, and of October 21st, 2013, and he provided the HIPPA patient authorization release form.

40. On October 29th, 2013, the radiologist, Dr. Ajay Verma, with offices at Orange City, Florida performed the core needle biopsy to Francisco M. López-Romo. Dr. Ajay Verma reported finding the patient had "Moderately differentiated squamous cell carcinoma, positive for high risk HPV and P16, see comment."

41. On November 1st, 2013, PET Scan was performed of the patient, Francisco M. López-Romo at the Mid-Florida Hematology and Oncology Center in Orange City, Florida. PET Scan Report reported the following findings: "Clinical History: Right jugular lymph node with squamous cell carcinoma ... right jugular lymph node with squamous cell carcinoma ... maximum tracer uptake value of 6.1. This is consistent with known malignancy ...Within the medial aspect of the right mandible ... a mass is present ... This is suspicious for prominent right salivary gland."

42. On November 1st, 2013, CT Scan without contrast of the patient's neck was performed at the Mid-Florida Hematology and Oncology Center. The Report reads as follows: "Right neck lymph node is again identified. The recent biopsy demonstrated this to be squamous

cell carcinoma."

43. On November 1st, 2013, CT Scan Chest/ABM/PLV W/ 2013 was performed of the patient at the Mid-Florida Hematology and Oncology Center and CD with "All Exams at MFHOC as of November 1st, 2013" was provided to Francisco M. López-Romo.

44. On November 6th, 2013, Francisco M. López-Romo received his copy of the defendant, Hospital Pavía Santurce's 2011 medical and hospitalization record number 311308.

45. On November 6th, 2013, while Francisco M. López-Romo was having dinner at the Roberts' residence, Francisco M. López-Romo read for the first time, Dr. Víctor Carlo Chevere's Pathology Report/Cytopathology Service that was included in the defendant, Hospital Pavía Santurce's patient's record.

46. On November 6th, 2013, Francisco M. López-Romo was shocked to learn that on July 22nd, 2011, Dr. Víctor Carlo Chévere had already reported as his "Final Diagnosis: Squamous Cell Carcinoma With Abundant Suppurative Inflammation. Comment: This may represent a metastatic lesion or the epidermoid component of a muco-epidermoid carcinoma. Clinical correlation is required." (Our underlining)

47. On November 6th, 2013, the plaintiff, Francisco M. López-Romo was shocked to learn that since July 22nd, 2011, all of the defendants, that had been his treating physicians, and the defendant Hospital Pavía Santurce all knew, or should have known, that the plaintiff, Francisco M. López-Romo had been diagnosed as a cancer patient with Squamous Cell Carcinoma.

48. On November 6th, 2013, the plaintiff, Francisco M. López-Romo was devastated when he finally found out that Dr. Víctor Carlo Chévere's pathology's report number N1101081

had been notified via facsimile to defendant Hospital Pavía Santurce three days before the plaintiff, Francisco M. López-Romo was discharged on July 25, 2011, and that Dr. Carlo Chévere had also reported that he had contacted someone else at Hospital Pavía Santurce to report his finding; that this ominous diagnosis of cancer had not been previously disclosed to the plaintiff, Francisco M. López-Romo; and that as the result of their omission, the patient had been denied an opportunity to begin any treatment for over two years.

49. On November 6th, 2013, the plaintiff, Francisco M. López-Romo became aware that the defendants, Dr. Ubaldo Santiago-Bruno and Dr. Luis Alvarez, Dr. John Doe, Dr. Richard Roe and Hospital Pavía Santurce, and others, had been acting with complete or callous indifference to his condition, and that these defendants had completely disregarded their duty to notify their patient about this very important information, and that they had already caused wasting over two years without the patient receiving any available treatments for his life-threatening condition.

50. "Despite impressive scientific, medical and technological achievements over the past few decades, cancer is still a leading cause of death, largely because most cancer patients are diagnosed when disease is advanced. Accumulating evidence suggests that in the case of many cancers, early detection is associated with improved survival rates." [Chapter 3: Mass Spectrometry in Cancer Diagnosis, Use of Tumor Markers in Clinical Practice: Quality Requirements, National Academy of Clinical Biochemistry Laboratory Medicine Practice Guidelines of The Academy of AACC. Edited by Catharine M. Sturgeon and Eleftherios Diamandis.] [Citing, Menon U, Jacobs, IJ. Recent Developments in ovarian

cancer screening. Curr Opin Obstet Gynecol 2000; 12; 39-42]

51. During November, 2013, the plaintiff, Francisco M. López-Romo underwent additional tests. The biopsy of his salivary glands produced negative results, and PET Scan and MRI were performed to determine if the presence of some cysts that were being reported in his kidneys were benign or were malignant.  On November 20th, 2013, Francisco M. López-Romo underwent esophagus endoscopy and colonoscopy.

52. During November of 2013, the plaintiff, Francisco M. López-Romo was referred to the Mayo Clinic's Department of Head and Neck Cancer in Jacksonville, Florida for additional consultation. Dr. Greg Ortega advised to this patient, "Finding the primary could potentially assist us on better treatment planning. This could result in less toxicity and a more cost-effective approach to care. Overtreatment may be avoided. This may be best performed in the center of excellence and experience in searching for difficult to find primaries in the oropharyngeal cavity".

53. During December of 2013, the Mayo Clinic had to postpone their scheduled medical intervention of the patient due to an ongoing insurance coverage dispute that the plaintiff Francisco M. López-Romo and the Mayo Clinic were having with Triple S' health insurance plan.

54. During December of 2013, Francisco M. López-Romo was able to provide all the documents being requested by Triple S for their pre-certification of his medical condition. Eventually, Triple S covered most of the hospitalization expenses incurred by the Mayo Clinic but the plaintiff still had to pay those uncovered medical and hospitalization expenses, approximately twenty thousand dollars ($20,000).

## IV. FIRST CAUSE OF ACTION

55. The averments contained in paragraphs 1 through 54 are adopted herein as if fully set forth.

56. On July 25th, 2011, the defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe failed to take notice of the defendant hospital's Pathology Report of the patient under their care, that is, of the plaintiff, Francisco M. López-Romo.

57. Three days before they discharged this patient, that is, since July 22nd, 2011, the Pathology's Report had been notified to them and they should have been informed that the principal diagnosis of this patient was squamous cell cancinoma.

58. Commencing on July 22nd, 2011, through July 25th, 2011, the defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe failed to disclose to their patient, that is, to the plaintiff, Francisco M. López-Romo that he had been diagnosed, on July 22nd, 2011, with a type of cancer, squamous cell carcinoma.

59. Commencing on July 22nd, 2011 through July 25th, 2011, no medical orders were entered by the defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe for this diagnosis of cancer, either in their patient's Order of Discharge or anywhere else in the plaintiff, Francisco M. López-Romo's hospitalization chart of defendant, Hospital Pavía Santurce.

60. The defendant, Hospital Pavía Santurce's medical and nursing staffs were negligent in their medical and nursing care of their patient, Francisco M. López-Romo. The hospital's medical and nursing staffs had the duty to read the Pathology's Report and to disclose its findings to the patient as well as of notifying all the attending physicians, or to call for

any additional medical assistance.

61. In plain terms, the patient, Francisco M. López-Romo was not properly cared for by the attending physicians or by the nurses that were employed by the defendant hospital.

62. Commencing on July 22nd, 2011 through July 25th, 2011, the defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe failed to provide the medical orders that were necessary for adequate follow up the patient's diagnosed condition. The defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe had received verbal and/or written notice that the plaintiff, Francisco M. López-Romo had been diagnosed with cancer. These defendants should have entered such medical orders as were then required under the prevailing medical standards before discharging their patient from the defendant hospital.

63. In the alternative, the defendant hospital did not have an effective protocol in place to insure that all of its cancer patients would receive the disclosure of their respective diagnosis.

64. The plaintiff, Francisco M. López-Romo was discharged and sent home without being told that his true medical condition was that of cancer and he was discharged without any medical advice or medical orders to commence some sort of medical treatment for his serious medical condition as cancer patient.

65. As a result of the patient's discharge without receiving any notice of this life-threatening condition it was not until after two (2) years had already elapsed that the plaintiff, Francisco M. López-Romo was able to find out and learn about his previous diagnosis of head and neck cancer and about his condition as cancer patient with squamous cancer

carcinoma.

66. The defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe's failure to timely disclose to their patient about his condition as cancer patient caused that the patient was unnecessarily exposed to the spread of the cancer and to possibly developing more cancer in any organ of his body.

67. The defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe did not properly analyze the symptoms and other physical signs that were presented to them by the plaintiff.  Either because the defendants failed to review the Pathologist's Report, or for whatever reason, these defendants knowingly and intentionally did not disclose such very important information to their patient.

68. Any physician that has been properly trained would have been very concerned with the information that was being disclosed that this patient was presenting the well-known medical condition that was identified as squamous cell carcinoma.

69. As the result of the gross negligence that was incurred by the defendants, Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe, or as the result of their lack of adequate training, and/or due to lack of sufficient monitoring being implemented by the defendant hospital, the plaintiff, Francisco M. López-Romo was unnecessarily exposed to a continuous life-threatening condition and he was also denied an opportunity to receive timely medical treatment for his serious condition.

70. The plaintiff, Francisco M. López-Romo was unreasonably exposed by the waste of very precious opportunities to immediately begin receiving any and all of the available treatments and of attempting to cure himself from his condition as cancer patient, and to

reduce the possibility of the worsening of his pre-existing condition.

71. The plaintiff, Francisco M. López-Romo was unreasonably exposed to probably having to suffer his premature death as a result of this condition, of a disease that may have been mutating or developing to what may now be an incurable condition, that may have developed only because of this delay that all the defendants caused by having blocked the opportunity for the patient to get timely and proper medical treatment for his condition.

72. The plaintiff, Francisco M. López-Romo was unreasonably exposed to additional risks and/or to worsening conditions by having been unreasonably delayed from commencing proper medical treatment. Under current and acceptable modern medical standards, the existence of analysis tests results and pathology/cytopathology reports that reported that any patient has head and neck cancer, demands that the patient be immediately attended to and he must be provided with available treatments, since this type of cancer is well known and has been well studied as life-threatening condition.

73. The lack of adequate monitoring and the lack of adequate reporting to the patient of the pathology report of his medical condition, and the lack of timely treatment, were the result of lack of proper analysis and/or lack of proper medical evaluation of the patient's serious condition.

74. The defendants Dr. Ubaldo Santiago-Bruno, Dr. Luis Alvarez, Dr. John Doe and Dr. Richard Roe's failure to provide adequate follow up by providing to the patient with adequate medical orders, and of ordering the necessary tests; and their failure to utilize those adequate diagnostic procedures as well as their inadequate management of the condition that was being presented to them, inhibited or delayed the patient's potential

recovery. Their management of the patient's condition was full of errors and omissions, together with an inexcusable failure to promptly notify to the patient of the cancer diagnosis that had been reported to them and their failure of reporting to the patient the underlying causes of his potentially life-threatening condition, were inexcusable failures to act and to attempt to correct the condition with prompt and adequate medical treatment. Evidently, the attending physicians and the rest of the hospital's personnel failed to recognize, or negligently ignored the patient's condition as well as the serious complications that the plaintiff, Francisco M. López-Romo would eventually suffer. Their joint fault and/or negligence placed his life at serious risk.

75. The plaintiff, Francisco M. López-Romo was not afforded the level of medical and nursing care that was then necessary to attend this potentially life-threatening condition.

76. Patients trust their healthcare providers to treat them under the best possible professional standards. Patients rely on their doctors to provide accurate diagnosis, their options for treatment and to inform them of those possible alternative conclusions. Unfortunately, patients are not always given the right information to make the best decision for their own care, as happened in this case. A diagnosis of <u>cancer</u> is a serious one, but it is not always an ending. Many people are treated, go into remission and live full lives <u>if their cancer is caught in the early stages</u>. By failing to take proper care of their patient, the defendants as the treating physicians, and the defendant, Hospital Pavía Santurce, missed the diagnosis of cancer that could have been timely notified to their patient and that would have helped to prolong the plaintiff's life.

77. The defendants, as healthcare professionals, <u>failed to diagnose, or failed to disclose the</u>

<u>diagnosis,</u> and the result may be that the plaintiff's present health condition was probably left seriously impaired and with reduced lifespan or with reduced quality of life.

78. Physicians are tasked with caring for their patients to the best of their abilities. When a mistake happens, it can result in harm to the patient that may be irreversible. A <u>missed diagnosis</u> by a medical professional may even prove to be fatal. The Pathology Reports and Cytopathology services play significant roles in the early detection of cancer. However, this role was greatly hampered when the patient's medical care providers failed to properly interpret the pathology/cytopathology results, or when they failed to properly respond to an abnormal result. Such negligence resulted in the head and neck <u>cancer diagnosis</u> being delayed. Delays in a patient receiving treatment for a condition can be very problematic. Such delays allow a serious condition more time to develop, which can lead to this patient suffering greater harms than he would have, had the condition been treated in a more timely manner.

79. There are many different tools that medical professionals have available to them that can help them detect head and neck cancer and its symptoms. Their failure to act probably led to the patient now suffering more serious future injuries, particularly since his cancer condition, although detected, went undisclosed and unaddressed for an extended period of time. A delayed diagnosis of cancer can be incredibly harmful to a person. Delay in a cancer condition can lead a person to having to face more serious and more prolonged treatments and bleaker potential outcomes.

80. Diagnosis-related negligence, such as the negligent failure to timely diagnose a condition of cancer that the patient is suffering from, can cause a great deal of harm. No patient

should have to be subjected to diagnosis-related negligence or to any failure to properly disclose the correct diagnosis. No patient should have to face diagnosis-related negligence at the hands of his medical professional or of his medical facility. Such negligence can be incredibly harmful to patients. Such negligence can sometimes even have fatal results.

81. It is very important for medical professionals and medical facilities to act properly when it comes to examining, testing and diagnosing their patients. When a person receives care from his medical professionals in connection to a health problem he or she is suffering from, it is very important for this problem to be correctly diagnosed. If the medical professionals fail to correctly <u>diagnose</u> a patient's condition because of negligence, the consequences can be devastating. A negligent missed diagnosis can result in the patient's medical condition going on untreated. This can cause a patient to suffer great harm. It can even result in the patient's death. The Defendants' joint negligence led to the delay in disclosing the presence of head and neck cancer in this patient, although it had been detected. Over two (2) years elapsed between the time of the negligence incurred in the defendants' failure to diagnose, or to their failure to properly disclose the diagnosis of cancer, and the time that the patient's cancer was finally re-detected and was finally reported to the patient.

82. The Plaintiff's immediate relatives, his wife and daughters, were relying on the defendants as the medical professionals that were employed by the defendant hospital, the Hospital Pavía Santurce, for their expertise and they were entrusting them with the life of their loved one. If a family member is not well for any reason, it is up to the

doctors and the nurses to determine what the problem is and the best course of treatment. Unfortunately, negligent mistakes happened and that negligent conduct is now costing the patient's wellbeing and may also cost him his life. Being aware of all of the above, the plaintiffs have suffered, and shall continue to suffer, mental pain and anguish, stress and/or emotional distress and moral damages. The patient's immediate family members are now left to wonder what might have been if their loved one had received the right diagnosis sooner.

83.  Plaintiffs, like most people, do not have the extensive medical knowledge that doctors, nurses and other medical professionals have. Patients typically trust that their physicians will properly assess their symptoms and provide proper and correct diagnosis and adequate treatment. Patients and their immediate relatives all suffer the consequences when their medical professionals miserably fail to perform in a responsible manner. Like other people across the country, the plaintiffs rely on their medical professionals to keep them healthy and treat any ailments they have. This requires open communication between everyone involved to ensure that maladies are treated properly. In this case, the lack of adequate communication by or between the health care providers is the most probable reason why this patient could be now suffering from an incurable condition.

84.  Patients trust their medical professionals to give them the best treatment possible. When a doctor, hospital or anyone charged with the medical care of a patient makes a mistake, it not only affects the patient but also anyone who loves and cares for him or her. The patient and his immediate relatives, the plaintiff's wife, Rosa I. Irlanda-Meléndez and the plaintiffs' daughters, Ariana López-Irlanda and Andrea López-Irlanda, and the plaintiff's

son, Francisco A. López-Mieres were told that the patient's cancer could have spread to other vital organs during this wasted time. Their awareness that the cancer may now be uncontrollable has caused the plaintiffs to suffer significant emotional distress and excessive preoccupation that have significantly affected their respective enjoyment of life.

85. This medical malpractice lawsuit stems from the misdiagnosis, or the delayed disclosure of the diagnosis of a serious medical condition, illness, or injury. When doctors' diagnosis errors lead to incorrect treatment, delayed treatment, or no treatment at all, the patient's condition can be made much worse, and the patient may even die.

86. It is alleged that doctors-patient relationship existed; that the doctors were negligent; that is, did not provide treatment in a reasonably skillful and competent manner; and that the doctors' negligence caused actual mental and/or physical injury to the patient and to his immediate relatives.

87. It is alleged that doctors in similar specialties, under similar circumstances, would not have failed to diagnose, or would not have failed to disclose the diagnosis, or would not have misdiagnosed the patient's illness or condition.

88. The defendants did not include the correct diagnosis on the differential diagnosis list, as a reasonably skillful and competent doctor under similar circumstances would have; and they failed to perform appropriate tests or seek opinions from specialists in order to investigate the viability of the diagnosis that was reported to them in the pathology/cytopathology report. Their delayed diagnosis has caused the patient's injury, or placed their patient's condition at the risk of progress beyond where it normally would

have, had the correct diagnosis been disclosed to the patient in a timely manner. This progression had a negative impact upon treatment.

89. Because of the delayed notification of the diagnosis of cancer, the patient was exposed to having to undergo more severe treatment regimen, such as chemotherapy, and the patient, and the plaintiffs, his wife, his daughters and his son have become very concerned that he may die because his cancer may have metastasized or may no longer respond to treatment.

90. The patient and his immediate relatives have suffered serious harm and emotional injuries even if the condition can still be treated. Any delay in treatment increases the risk of recurrence of head and neck cancer. The patient and his immediate relatives have suffered unnecessary harm in the form of anxiety, stress, and medical expenses due to this belated treatment. The defendants missed the patient's diagnosis. These medical doctors gave the patient a clean bill of health, when in fact the patient had an illness or disease.

91. The plaintiffs were counting on his doctors to perform the appropriate tests to find out exactly what was going on and to provide the appropriate treatment. When a doctor fails to do so and/or treatment is delayed, the medical condition could get significantly worse, even to the point where it is no longer curable. The defendants were negligent and failed to provide the available techniques for adequately monitoring this potentially life-threatening condition, with the due attention or vigilance that was necessary, or the defendants failed to provide adequate notice to their patient of the diagnostic and therapeutic treatment that was then available, under the standards of medical care and of

the medical treatment alternatives that were actually recognized as adequate by the medical profession. The defendants, including defendant Hospital Pavía Santurce are jointly liable to the plaintiffs, that is, Francisco M. López-Romo and Rosa I. Irlanda-Meléndez,  Ariana López-Irlanda and Andrea López-Irlanda and Francisco A. López-Mieres, for their own negligence or for their joint negligent acts and/or omissions or of those of their respective employees.

92. The conjugal partnerships that are constituted by the defendants that are medical doctors, and their respective spouses, who were identified as Jane Doe and Jane Roe are also liable to the plaintiffs, inasmuch as their respective conjugal partnerships received some benefits or income derived by the physicians for their medical services.

93. The defendants departed from the standards of medical care and treatment that were recognized as adequate by the medical profession in light of the modern means of instruction, education and communication and which directly caused or contributed to not timely informing the plaintiff, Francisco M. López-Romo, of his condition as cancer patient, and are liable for the physical and emotional pain and suffering that have been experienced by the plaintiffs.

94. The defendants failed to display the care or to take those measures that prudent and reasonable persons with similar medical training would have taken under these circumstances. The defendants did not offer to their patient, Francisco M. López-Romo the medical attention that was adequate and was then due to him. The defendants' acts, errors or omissions directly caused or contributed to the potential physical or mental damages being suffered by the plaintiffs, and to the potential physical deterioration of the

plaintiff, Francisco M. López-Romo. The patient was allowed or was exposed to continue developing a very risky medical condition and he was made the victim of faulty medical lack of disclosure of such serious diagnosis that probably has deteriorated his health and may have resulted in the plaintiff, Francisco M. López-Romo's being placed at risk of an unnecessary or untimely death. As a direct consequence of the defendants' joint gross negligence, the plaintiffs have suffered and are suffering and will forever suffer mental and emotional anguishes and the potential loss of their enjoyment of life.

95. The plaintiff, Francisco M. López-Romo demands as compensation for his own physical and emotional damages the sum of One Million Dollars ($1,000,000).

96. The plaintiffs, Rosa I. Irlanda-Meléndez, Ariana López-Irlanda, Andrea López-Irlanda and Francisco A. López-Mieres demand as adequate compensation for their respective emotional damages, the sum of Five Hundred Thousand Dollars ($500,000) for each.

WHEREFORE, the plaintiffs, Francisco M. López-Romo, Rosa I. Irlanda-Meléndez, Ariana López-Irlanda, Andrea López-Irlanda and Francisco A. López-Mieres hereby demand trial by jury and pray for the following legal and equitable remedies:

a. That this Court assume jurisdiction over this case and these parties;

b. That this Court enters Judgment after the jury verdict is entered against the defendants for the sums requested herein-above, together with interests, costs and reasonable attorney's fees;

c. For this Court to grant such further relief as the Court may deem to be proper;

d. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the plaintiffs hereby respectfully request trial by jury in this action.

RESPECTFULLY SUBMITTED.

In Winter Park, Florida, this 21<u>st</u> day of October, 2014.


*/s/ Francisco M. Lopez-Romo*

By:     FRANCISCO M. LOPEZ-ROMO
        USDC No. 118314
        431 Ponce de León Avenue
        Suite 1500
        San Juan, Puerto Rico  00917-3415
        Telephone:  787-751-8958
        Facsimile:  787-765-0325
        Email: <u>lopezromo@gmail.com</u>


*/s/ Dennis A. Simonpietri-Monefeld*

By:     DENNIS A. SIMONPIETRI-MONEFELD
        USDC No.:  117913
        16-A Regina Street
        Santa Paula
        Guaynabo, Puerto Rico  00969
        Telephone:  787-790-4898 / 787-731-5001
        Facsimile: 787-731-5001
        Email: <u>dennissimonpietri@gmail.com</u>